Affirmed and Memorandum Opinion filed September 13, 2007








Affirmed and Memorandum Opinion filed September 13, 2007

 

In The 

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00218-CR

_______________

 

RAUL MARTINEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 1000727

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, Raul Martinez, guilty of murder and sentenced him to thirty
years= confinement.  In two issues,
appellant contends the trial court erred by (1) denying his motion to suppress
audiotaped statements that he made to a police officer because they were the
result of custodial interrogation, and (2) admitting his audiotaped statements
into evidence because the State introduced part but not all of the statements. 
Our disposition is based on settled law.  Accordingly, we issue this memorandum
opinion and affirm.  See Tex. R.
App. P. 47.4.








I.  Background 

On
September 11, 2004, Sergio Umanzor was shot to death while sitting in his car
in front of his residence in Houston.  Houston Police Officer Todd Miller
reported to the scene and began the investigation.  At trial, Officer Miller
testified that he  spoke with appellant=s emotionally distraught wife on a
cell phone while at the scene.  Based on the conversation, Officer Miller
wanted to speak with appellant because he thought a potential motive for the
shooting may have been jealousy.  

On
September 13, 2004, Officer Miller and his partner drove to Carollton, Texas,
to speak with appellant about the shooting.  The officers went to the body shop
where appellant worked and asked if he would talk with them about the
shooting.  Subsequently, the police audiotaped two statements given by
appellant at the Carrollton Police Station.  After the first statement,
appellant directed the police to the residence of Fabian Borgus, a person whom
appellant claimed to be with at the time of the shooting.  Although the
officers were not able to locate Borgus, he later came to the police station
and spoke with the Officer Miller.  After speaking with Borgus, Officer Miller
spoke again with appellant.  Appellant gave a second audiotaped statement in
which he implicated himself in the shooting.  After obtaining appellant=s second statement, Officer Miller
secured a warrant and arrested appellant.

Before
trial, appellant filed a motion to suppress the two audiotaped statements. 
After conducting a hearing, the trial court denied appellant=s motion to suppress.  The statements
were admitted into evidence.  The jury found appellant guilty of murder and
sentenced him to thirty-five years= confinement.  

II.  Audiotaped Statements 








In his
first issue, appellant contends the trial court erred by denying his motion to
suppress the audiotaped statements he made to Officer Miller because they were
the result of custodial interrogation and were not freely and voluntarily
made.  Specifically, appellant contends that the statements were not freely and
voluntarily made because (1) based on his limited education and
English-language proficiency, he did not knowingly, intelligently, and
voluntarily waive his Miranda rights prior to and during the
questioning, and (2) the officers Aignored@ appellant=s repeated assertions of his right to
have his attorney present.  In response, the State contends appellant was not
in custody when he made the statements. 

A.        Standard of Review

We review a trial
court=s ruling on a
motion to suppress evidence under a bifurcated standard of review. Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court=s decision, we do
not engage in our own factual review.  Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990).  At a suppression hearing, the trial judge is the
sole trier-of-fact and judge of the credibility of the witnesses and the weight
to be given to their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000).  The trial court may believe or disbelieve all or any part of
a witness=s testimony, even if that testimony is not
controverted. Id.  We review de novo the trial court=s application of
the law.  Carmouche, 10 S.W.3d at 327.

B.      Analysis 








Article 38.22 of
the Texas Code of Criminal Procedure prohibits the use of oral statements made
as a result of custodial interrogation unless, inter alia an electronic
recording is made of the statement, Miranda warnings are given, and the
accused knowingly, intelligently, and voluntarily waives any rights set out in
the warnings. See Tex. Code Crim.
Proc. Ann. art. 38.22 ' 3(a)(1)S(2) (Vernon 2005).
Article 38.22 codifies both Miranda=s system of
protecting a suspect against self-incrimination and its distinction between
voluntary statements and compelled confessions.  See Stahle v. State,
970 S.W.2d 682, 690 (Tex. App.CDallas 1998, pet. ref=d).  Pursuant to
article 38.22, section 5, nothing precludes admission of a statement that is
either (1) res gestae of the arrest or offense, (2) a statement that does
not stem from custodial interrogation, or (3) a voluntary statement,
whether or not the result of custodial interrogation. Tex. Code Crim. Proc. Ann. art. 38.22  ' 5 (Vernon 2005)
(emphasis added).  If either the Acustodial@ or Ainterrogation@ predicates are
not met, article 38.22 does not apply.  Villarreal v. State, 61 S.W.3d
673, 680 (Tex. App.CCorpus Christi 2001, pet. ref=d).

Custodial
interrogation is questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of freedom of action
in any significant way.  See Miranda v. Arizona, 384 U.S. 436, 444
(1966).  A person is Ain custody@ only if Aunder the
circumstances, a reasonable person would believe that his freedom of movement
was restrained to the degree associated with a formal arrest.@  Dowthitt v.
State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).  The reasonable person
standard presupposes an innocent person, and the subjective intent of law
enforcement officials is irrelevant unless it is communicated or otherwise
manifested to the suspect.  Id.   Four factors relevant to determining
whether a person is in custody are: (1) probable cause to arrest, (2)
subjective intent of the police, (3) focus of the investigation, and (4)
subjective belief of the defendant.  Id.  (citing Meek v. State,
790 S.W.2d 618, 621B22 (Tex. Crim. App. 1990)).  Under Stansbury
v. California, factors two and four have become irrelevant except to the
extent that they may be manifested in the words or actions of police officers;
the custody determination is based entirely upon objective circumstances.  Dowthitt,
931 S.W.2d at 254 (citing Stansbury v. California, 511 U.S. 318, 322B23 (1994)).  The
determination of custody must be made on an ad hoc basis, after considering all
of the circumstances.  Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim.
App. 1985).  Stationhouse questioning does not in and of itself constitute
custody.  Id. at 255.  Becoming the focus of an investigation does not
equate to custody for purposes of determining whether a statement is voluntarily
given.  Meek, 790 S.W.2d at 621.  








There are four
general situations in which a suspect=s detention may
constitute custody: (1) when the suspect is physically deprived of his freedom
of action in any significant way, (2) when a law enforcement officer tells the
suspect he cannot leave, (3) when law enforcement officers create a situation
that would lead a reasonable person to believe his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest and
law enforcement officers do not tell the suspect he is free to leave.  Dowthitt,
931 S.W.2d at 255.  In the first through third situations, the restriction upon
freedom of movement must amount to the degree associated with an arrest as
opposed to an investigative detention. Id.  Relative to the fourth
situation, the officers= knowledge of probable cause must be
manifested to the subject, and such manifestation could occur if information
sustaining the probable cause is related by the officers to the suspect or by
the suspect to the officers.  Id.  However, the fourth situation does
not automatically establish custody; rather, custody is established if the
manifestation of probable cause, combined with other circumstances, would lead
a reasonable person to believe he is under restraint to the degree associated
with an arrest.  Id.  

Appellant contends
his statements were the
result of custodial interrogation and not freely and voluntarily made because
he did not knowingly, intelligently, and voluntarily waive his right to an
attorney prior to and during the questioning due to his limited education and
lack of proficiency in the English-language.  Specifically, appellant refers to
his testimony at the hearing that he cannot speak English well, can hardly read
Spanish or English, and only completed school through the sixth grade in
Mexico.  Appellant also contends the statements were not freely and voluntarily made because
the officers Aignored@ his repeated assertions of his right to have his attorney present. 
Specifically, appellant refers to his testimony at the hearing and avers that
he asked the officers for his attorney.  








However, at the
motion to suppress hearing, the trial court heard testimony from both Officer
Miller and appellant.  The trial court issued written findings of fact in which
the trial court found Officer Miller=s testimony
credible and appellant=s testimony not credible.  The trial court
also found the following: (1) Officer Miller did not coerce or threaten
appellant either physically or emotionally into going to the Carrollton Police
Station with Officer Miller;  (2) Officer Miller read Miranda warnings
to appellant from a card in English, and appellant indicated that he understood
each right by placing his initials on the card by the Spanish version; (3)
appellant advised Officer Miller that he understood his rights and freely and
voluntarily waived his rights and agreed to talk with Officer Miller;   (4)
Officer Miller did not make any promises to appellant in order to persuade him
to waive his rights and give a statement; (5) appellant never requested
permission to consult with an attorney while speaking with Officer Miller; (6)
appellant never mentioned that he was represented by counsel for this murder
investigation; and (7) appellant=s statements were
an act of his own free will, and were not a result of any coercion, threats,
promises, or undue influence. 








Officer Miller=s testimony supports the trial court=s findings of fact. Specifically,
Officer Miller testified as follows:  He and his partner drove to Carrollton,
Texas, on September 13, 2004, to speak with appellant.  They wanted to speak
with appellant to determine if he was involved in the shooting.  They went to
the body shop where appellant worked and told him they were investigating a
shooting that occurred in Houston.  They asked if he would accompany them to
the Carrollton Police Station to talk with them.  Appellant agreed.  Appellant
rode in an unmarked car to the police station and was not handcuffed.  At the
police station, Officer Miller gave appellant a copy of the Miranda
warnings in English and Spanish and asked appellant to read along in Spanish
while Officer Miller read them aloud in English.  Officer Miller asked
appellant if he was Acomfortable@ talking in
English, and appellant assured him that he was comfortable by saying, AIt=s fine.@  Appellant
initialed on the Spanish version next to each warning indicating he both
understood and agreed to waive the warning. Officer Miller explained to
appellant at the beginning of the interview that he was free to leave the room
at any time.  During the interview, appellant never asked to leave.  Furthermore,
the questioning occurred in an interview room which opened to the investigative
area which had a doorway for exiting.  At the body shop or the police station, appellant never told Officer Miller
that he was represented by counsel.  Appellant never requested an attorney
during the interview or asked to stop the interview.  After appellant=s first audiotaped statement, he
directed Officer Miller to his alibi=s residence, while sitting without
handcuffs in the back seat of the unmarked car.           As sole trier-of-fact
and judge of the credibility of the witnesses and the weight to be given to
their testimony, the trial court was free to believe Officer Miller=s testimony.  See Ross, 32 S.W.3d at
855.  Based on Officer Miller=s testimony and considering all the
circumstances, we conclude appellant was not in custody when Officer Miller
interviewed him.  Therefore,
we hold article 38.33 does not apply to appellant=s statements. 

Moreover, even if
appellant was in custody when he gave the two statements, the trial court heard
the testimony concerning appellant=s decision to
waive his Miranda rights and concluded that he voluntarily gave the
statements after he was advised of and  intelligently waived his Miranda
rights.  This conclusion is supported by Officer Miller=s testimony at the
hearing.  Therefore, even if he were in custody, the trial court did not err by
denying appellant=s motion to suppress because appellant
voluntarily waived his Miranda rights.  Accordingly, we overrule
appellant=s first issue.  

III.  Texas
Rule of Evidence 107

In his second issue, appellant
contends the trial court erred by admitting his statements Abecause the State introduced part,
but not all of the statements into evidence, which then invokes Rule 107 B the Rule of Optional Completeness of
the Texas Rules of Evidence, that expressly allows for the remainder of the
statements.@  Appellant=s argument is not entirely clear.  Appellant apparently
contends that admission of his recorded statements violated Rule 107 because:
(1) Officer Miller failed to tape his entire conversation and interview with
appellant and only taped appellant=s formal statements; and (2) Officer
Miller allegedly stopped the recorder every time appellant asked for his
lawyer.[1]








However, the record reflects that
appellant failed to object on the basis of Rule 107 in his motion to suppress
or when the statements were offered into evidence.  Therefore, appellant failed
to preserve his complaint for our review because his  trial objection does not
comport with his complaint on appeal.  Swain v. State, 181 S.W.3d 359,
367 (Tex. Crim. App. 2005). We overrule appellant=s second issue.  

Accordingly, the judgment of the
trial court is affirmed.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum Opinion filed September 13,
2007.

Panel consists of Justices Yates, Edelman, and Seymore.*

 

 

 

 









[1]  Under Texas Rule of Evidence 107, when part of an
act, declaration, conversation, writing or recorded statement is given in
evidence by one party, the whole on the same subject may be inquired into by
the other, and any other act, declaration, writing or recorded statement which
is necessary to make it fully understood or to explain the same may also be
given in evidence, as when a letter is read, all letters on the same subject
between the same parties.  See Tex.
R. Evid. 107. 





* 
Senior Justice Richard H. Edelman sitting by assignment.